**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT BLUE, | |
|     Plaintiff, | 3:11-cv-00010-ECR-VPC |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| HOWARD SKOLNIK, *et al.*, | |
|     Defendants. | July 31, 2012 |

This Report and Recommendation is made to the Honorable Edward C. Reed, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for a temporary restraining order and preliminary injunction, which plaintiff styled as an "Emergency Motion" (#50, #51).[1] Defendants opposed (#56, #57)[2] and plaintiff did not reply. After a thorough review of the record, the court recommends that plaintiff's motion for a temporary restraining order and preliminary injunction (#50, #51) be denied.

### I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Robert Blue ("plaintiff"), a *pro se* inmate, is currently incarcerated at Lovelock Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC") (#4). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First and Eighth Amendment rights. *Id.*[3] Pursuant to 28 U.S.C. § 1915A, the court screened the complaint

---

[1] Refers to the court's docket number. Docket numbers 50 and 51 are identical documents.

[2] Docket numbers 56 and 57 are identical documents.

[3] Plaintiff recently sought leave to file an amended complaint (#49) and also filed a motion to withdraw (#61) his motion for leave to amend his complaint. A motions hearing is scheduled for August

and permitted the following claims to proceed: (1) count I First Amendment claim against defendants Neven, Baca, Morrow, Calderon, Garcia and Does 1 and 2; (2) count II Eighth Amendment claim against defendants Neven, Baca, Morrow, Calderon, Garcia and Does 1 and 2; (3) count III First Amendment claim against defendants Williams and Taylor; (4) count IV Eighth Amendment claim against defendants Williams and Taylor; (5) count IX First Amendment claim against defendant Skolnik; and (6) count X Eighth Amendment claim against defendant Skolnik (#3).[4] The court dismissed counts V, VI, VII, and VIII in their entirety. *Id*. at 6-7. The court also dismissed all claims against defendant Skolnik except for counts IX and X. *Id*. at 7.

In count I, plaintiff alleges that officials at High Desert State Prison ("HDSP") violated his First Amendment rights when they deprived him of adequate kosher nourishment from about April 2009 to December 2009 (#4, p. 11). Defendants Neven, Baca, Morrow, Calderon, and Garcia denied plaintiff's grievances. Plaintiff also clams that when he agreed with his cellmate to trade for his cellmate's kosher food items, defendants Doe officers 1 and 2 refused to allow plaintiff a mainline food tray unless he stood at the cell door and ate all of the items in front of the officers. *Id*. at 15.

In count II, plaintiff claims that the deprivation of adequate nutrition, as set forth in count I, also violates his Eighth Amendment rights. *Id*. at 19.

In count III, plaintiff claims that his First Amendment rights were violated when he was transferred to administrative segregation at Southern Desert Correctional Center ("SDCC") and was deprived of sufficient kosher-compliant food. *Id*. at 20-21. Plaintiff claims he received about three-hundred calories per day of kosher food and that defendants Williams and Taylor denied his grievances. *Id*.

In count IV, plaintiff alleges the same set of facts as in count III and states an Eighth Amendment claim against defendants Williams and Taylor. *Id*. at 22.

---

3, 2012 (#68).

[4] The court partially granted plaintiff's motion for reconsideration of the court's screening order and permitted plaintiff's claims which proceeded pursuant to the First Amendment (#3) to also proceed pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (#12).

In count IX, plaintiff claims that defendant Skolnik violated plaintiff's First Amendment rights when on December 6, 2010, defendant Skolnik issued a memorandum notifying all kosher-observant Jewish inmates who received kosher meals that those meals would be eliminated effective February 1, 2011. *Id*. at 28.

In count X, plaintiff alleges the same set of facts as in count IX and claims that defendant Skolnik violated plaintiff's Eighth Amendment rights. *Id*. at 30.

Plaintiff filed the present motion for injunctive relief on April 27, 2012 (#50, #51). In his emergency motion, plaintiff alleged that officials at LCC denied him kosher meals and that this caused him to become malnourished. *Id*. This court held a motions hearing on May 14, 2012 and plaintiff indicated that his requests for injunctive relief had changed since the filing of the motion in dispute (#60).[5] Plaintiff stated that the kosher status and nutritional status of the food at LCC was no longer in dispute and only two issues remained: (1) that plaintiff be permitted to eat his kosher meals at a table with other kosher-observant inmates in the culinary or to eat his meals in his cell; and (2) that defendants provide plaintiff with fish for every Shabbat meal rather than every other Shabbat meal (#50, pp. 6, 11, 16, 29; #60).

Defendants oppose plaintiff's motion and note that plaintiff is a member of the class of plaintiffs in the class-action, kosher-meal case, *Ackerman v. Department of Corrections*, 2:11-cv-00883-GMN-PAL ("*Ackerman Litigation*") (#56, p. 5). The *Ackerman* litigation is stayed, pending a settlement of the action. The *Ackerman* court granted plaintiffs' motion for a preliminary injunction and ordered that plaintiff receive the current kosher meal ("CKM") and not some variation of the meal. *See Ackerman Litigation* #72; #114, p. 9. Thus, defendants argue that to the extent plaintiff requests a new variety of meals, this request contradicts the injunctive relief that he has obtained and permanent relief he requests from the *Ackerman* court (#56, p. 6). As to plaintiff's request to eat his meals with other kosher-observant inmates or in his cell, defendants argue that requiring plaintiff to eat in the culinary hall from Sunday through Friday does not violate kosher law

---

[5] The court subsequently listened to the recording of the May 14, 2012 hearing to confirm that plaintiff narrowed his claims for injunctive relief.

3

according to an orthodox Jewish Rabbi expert. *Id*. at 7. As for plaintiff's request for fish with every Shabbat meal, defendants contend that the CKM is kosher, nutritionally sufficient, and ordered by the *Ackerman* court. *Id*. at 11. Defendants further argue that plaintiff does not meet the higher burden required for the granting of a mandatary preliminary injunction.

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Temporary Restraining Order Legal Standard

A temporary restraining order is available when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. *See* Fed. R. Civ. P. 65(b); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2951 (3d. 1998). Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n. 2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981).

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688-90 (2008) (citations and quotation omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 17 (2008) (citation and quotation omitted). The instant motion requires the court to determine whether plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 17 (citation omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d. 1045, 1049-50 (9th Cir. 2010); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*,

4

the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. 7 at 51 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d. at 1131. In light of the *Winter* decision, however, the Ninth Circuit determined that the Circuit's sliding-scale approach, or "serious questions" test "survives . . . when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d. at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id*. The portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to the likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

An even more stringent standard is applied where mandatory, as opposed to prohibitory, preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

Finally, the Prison Litigation Reform Act ("PLRA") mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring

5

any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, Section 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore*, 220 F.3d at 999.

**B.     Analysis**

   **1.     Consumption of Meals in the Culinary Dining Facility**

Plaintiff asks this court to order defendants to allow plaintiff to eat his meals with other kosher-observant inmates or in his cell. Plaintiff alleges that eating his morning or evening meals in the culinary with non-kosher observant inmates is a violation of his rights because: (1) it prevents him from performing his sacred acts at mealtime; (2) subjects him to "profane intrusions and desecrations of the sanctity of his meal service to the Almighty;" (3) contaminates his kosher food; and (4) causes him to defile himself (#50, pp. 11-12). Plaintiff also requests a prayer card during meal-times. Defendants argue that plaintiff does not meet the higher burden required for the granting of a mandatory preliminary injunction and that the challenged policy does not violate kosher law (#56, p. 7).

   **a.     Likelihood of Success on the Merits**

To succeed on the merits of his claims under the First Amendment, plaintiff must show that defendants have burdened the practice of his religion without a justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). Plaintiff has not shown he is likely to succeed on the merits of his First Amendment claim because he offers no evidence that eating with non-kosher inmates burdens the practice of his religion. Defendants submit Rabbi Rosskamm's declaration which states that requiring kosher-observant inmates to eat

6

their meals in the culinary with non kosher-observant inmates does not violate kosher law (#56, Rosskamm declaration, p. 4). Rabbi Rosskamm's declaration discusses the requirements according to kosher law regarding consumption of kosher meals and explains how the CKM complies with kosher law. *Id*. at 4-5. Kosher food is not rendered non-kosher by one's eating the food in the culinary with other non-Jewish or non-kosher observant inmates, when the inmate has access to a mat on the table beneath one's food tray and access to water for orthodox Jewish inmates to wash their hands prior to eating (#56, Rosskamm declaration, pp. 4-5; #56, Cox Declaration, p. 6). Plaintiff and other kosher-observant inmates receive their Saturday breakfast and lunch the night before so that they can eat their breakfast after their morning prayer in compliance with kosher law. NDOC has accommodated plaintiff with respect to these requirements and allows plaintiff to practice his religion freely.[6] *Id*. at 5-7. Regarding plaintiff's request for a prayer card, NDOC has agreed to provide plaintiff or other prisoners with a pre-printed prayer card while in the culinary hall (#56, Cox Declaration, p. 9).

Plaintiff also fails to show that requiring kosher-observant inmates to eat breakfasts and dinners in the culinary is not rationally related to legitimate government interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). NDOC Deputy Director Greg Cox states that the policy requiring LCC inmates to eat meals in the culinary hall reflects adherence to a uniform practice that is observed at all other NDOC prisons (#56, Cox Declaration, p. 4). Further, the policy "is predicated on a consideration of the adverse, institutional risks presented when inmates are permitted to bring meals back to their cells." *Id*. First, Mr. Cox explains that if kosher-observant inmates were permitted to eat their food in their cells, kosher food could be viewed as more valuable than other mainline meals and could be used for "improper bartering, [and] trading." *Id*. Allowing kosher-observant inmates to have this exception could be perceived by other inmates as favoritism which could lead to security risks. *Id.* at 5. Further, allowing kosher-observant inmates to take meals to their cells could result

---

[6] NDOC permits plaintiff to have a layer of material separating the bottom of his food plate or tray and the table on which it rests. The CKM is provided to plaintiff and other kosher-observant inmates in a closed "clam-shell" container, according to kosher law. Further, plaintiff is permitted to perform meal-time hand-washing as is required by kosher law. Plaintiff may also say his meal-time prayers and the prison will provide him with a pre-printed prayer card (#56, Cox Declaration, pp. 3-6).

in inmates eating food after it spoils which would pose a health risk to inmates. *Id*. Lastly, it is more efficient to call all inmates from a particular housing unit to eat in the culinary for a particular meal than to call only some inmates from a housing unit. *Id*.

To establish a RLUIPA violation, plaintiff must show that the defendants imposed a substantial burden on his religious exercise. *See Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir. 2005). Once plaintiff shows a substantial burden on his exercise of religion, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id*. at 995. Plaintiff fails to show that requiring him to eat his meals in the culinary hall substantially burdens his exercise of religion. As the court previously discussed, requiring plaintiff to eat his meals in the culinary hall does not violate kosher law and is not a substantial burden on plaintiff's religious exercise (#56, Rosskamm declaration, p. 4).

### b. Likelihood of Irreparable Harm

"Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 8. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Courts generally look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. Cal. Bd. of Med. Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991). A First Amendment violation may constitute irreparable injury; however, plaintiff has not demonstrated a likelihood of success on his First Amendment claim. *See Sammartano v. First Judicial District Court*, *County of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002). Plaintiff has not presented evidence to show a likelihood of irreparable injury if the court does not order LCC to allow plaintiff to eat his meals in his cell or with only kosher-observant inmates. Plaintiff receives the CKM menu ordered by the *Ackerman* court and is not likely to suffer irreparable harm.

### c. Balance of Hardships

8

The balance of hardships does not tip sharply in plaintiff's favor. Issuance of any preliminary injunctive relief would require this court to significantly interfere with NDOC policy and require NDOC to cater to plaintiff's particular preferences. For the reasons discussed, plaintiff's motion does not warrant interference with NDOC's internal policies and regulations. Therefore, the balance of equities does not favor issuance of an injunction.

### d. Public Interest

Ordering NDOC to change their policy and allow plaintiff to eat his meals with only other kosher-observant inmates or in his cell does not benefit the public interest because the court is not in a position to decide security decisions in prisons. *See Turner*, 482 U.S. at 89 (holding that the courts should not subject security-related judgments of prison officials to strict scrutiny). Here, the public is not served where the court's order would potentially pose a security risk and require the NDOC to cater to plaintiff's particular preferences.

### 2. Fish Consumption at Every Shabbat Meal

Plaintiff argues that defendants should provide him with fish at every weekly Shabbat meal and not just every other week (#50, pp. 16, 29). Currently, the CKM provides for the cycling of meats and fish on Shabbat, during a four week cycle (#56, Ex. A). Kosher-observant inmates receive fish on weeks one and three on Saturdays. *Id*. at pp. 8, 12. Defendants argue that requiring NDOC to alter the menu schedule, based merely on plaintiff's preference is not supported by constitutional law and does not meet the requirements for the granting of mandatory injunctive relief (#56, p. 17) (citing *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Further, ordering a change in the menu schedule would conflict with the court-approved menu ordered in the *Ackerman* litigation (*Ackerman Litigation*, #47, Ex. A; #72).

### a. Likelihood of Success on the Merits

To succeed on the merits of his claims under the First Amendment, plaintiff must show that defendants have burdened the practice of his religion without a justification reasonably related to legitimate penological interests. *See Shakur*, 514 F.3d at 884. Plaintiff has not shown that he is likely to succeed on the merits of his First Amendment claims because he offers no evidence that not

9

receiving fish with every Shabbat meal burdens his practice of religion. Nor does he show that the current meal schedule is not rationally related to legitimate government interests. *Turner*, 482 U.S. at 89-91. As previously discussed, plaintiff practices his religion freely even though he does not have fish at every Shabbat meal. Further, plaintiff is not likely to succeed on the merits of this claim because the food plaintiff receives is kosher and has been ordered by the *Ackerman* court.

To establish a RLUIPA violation, plaintiff must show that the defendants imposed a substantial burden on his religious exercise. *See Warsoldier,* 418 F.3d at 994. Once plaintiff shows a substantial burden on his exercise of religion, defendants must prove that the burden both furthers a compelling governmental interest and is the least restrictive means of achieving that interest. *Id*. at 995. Plaintiff fails to show that not eating fish at every Shabbat meal substantially burdens his religious exercise. Plaintiff states that "defendants progressively eliminated a preponderance of the fish . . . from [his] religious diet" and claims that this occurred following the court's order (#50, p. 16). The CKM diet is kosher and is currently ordered to be provided to plaintiff and a class of kosher-observant Jewish inmates through the *Ackerman* litigation. Plaintiff has failed to show that there is a substantial burden on his religious exercise of consuming kosher food or that receiving fish every week is a requirement according to kosher law.

### b. Likelihood of Irreparable Harm

"Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 9. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Plaintiff has not shown that there is a likelihood of irreparable harm because the menu schedule now provided to him is kosher and nutritionally sufficient. Further, the *Ackerman* court ordered this menu in the course of litigation. Plaintiff has provided no evidence of irreparable harm if he does not receive fish with every Shabbat meal.

### c. Balance of Hardships

10

The balance of hardships does not tip sharply in plaintiff's favor. Issuance of any preliminary injunctive relief would require this court to order NDOC to spend resources accommodating plaintiff. Further, the *Ackerman* court has already ordered a kosher menu and ordering a customized menu for plaintiff would result in inconsistent court rulings.

### d. Public Interest

Ordering NDOC to provide plaintiff with fish for every Shabbat meal does not benefit the public interest because it would require NDOC to cater to plaintiff's specific requests. Further, inconsistent court rulings are not in the public interest.

The court recommends that plaintiff's request for a temporary restraining order and preliminary injunction (#50, #51) be denied. Plaintiff requests mandatory preliminary relief and this type of relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson*, 612 F.2d at 1115. Here, plaintiff does not demonstrate that he is likely to succeed on the merits, that he is likely to suffer irreparable harm related to his underlying claims, that the balance of equities tips in his favor, or that an injunction is in the public interest.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court recommends that plaintiff's motion for a temporary restraining order and preliminary injunctive relief (#50, #51) be **DENIED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for temporary restraining order and preliminary injunctive relief (#50, #51) be **DENIED**.

**DATED:** July 31, 2012.

*/s/ Valerie P. Cooke*
_____
**UNITED STATES MAGISTRATE JUDGE**