**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ROBERT BLUE,                          )
                                      )        3:11-cv-00010-LRH-VPC
          Plaintiff,                  )
                                      )
     v.                               )        **REPORT AND RECOMMENDATION**
                                      )        **OF U.S. MAGISTRATE JUDGE**
HOWARD SKOLNIK, *et al.,*              )
                                      )
          Defendants.                 )        August 21, 2013
_____ )

         This Report and Recommendation is made to the Honorable Larry R. Hicks, United States

District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#89).[1]

Plaintiff opposed (#105) and defendants replied (#108).  The court has thoroughly reviewed the

record, and recommends that defendants' motion for summary judgment (#89) be granted in part and

denied in part.

## I.  HISTORY AND PROCEDURAL BACKGROUND

         Plaintiff Robert Blue ("plaintiff"), a *pro se* inmate, is currently incarcerated at Lovelock

Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC")

(#4).  On February 17, 2011, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983,

alleging that prison officials violated his constitutional rights under the First and Eighth

Amendments and his statutory rights under the Religious Land Use and Institutionalized Persons Act

("RLUIPA").  *Id.*  The court screened the complaint pursuant to 28 U.S.C. § 1915A, and permitted

---

[1] Refers to the court's docket numbers.

the following claims to proceed: (1) First Amendment free exercise and RLUIPA claims against defendants Neven, Baca, Morrow, Calderon, Garcia, and Does 1 and 2 (count I); (2) Eighth Amendment cruel and unusual punishment claim against defendants Neven, Baca, Morrow, Calderon, Garcia, and Does 1 and 2 (count II); (3) First Amendment free exercise and RLUIPA claims against defendants Williams and Taylor (count III); (4) Eighth Amendment cruel and unusual punishment claim against defendants Williams and Taylor (count IV); (5) First Amendment free exercise and RLUIPA claims against defendant Garcia (count VII); (6) Eighth Amendment cruel and unusual punishment claim against defendant Garcia (count VIII); (7) First Amendment free exercise and RLUIPA claims against defendant Skolnik (count IX); and (8) Eighth Amendment cruel and unusual punishment claim against defendant Skolnik (count X) (#3; #12, p. 3).

Plaintiff alleges that he is a practicing Orthodox Jew and requires a kashrut compliant kosher diet (#4, p. 13).[2]  Plaintiff alleges that defendants deprived him of kosher nourishment for multiple and prolonged periods of time, even though he has consistently refused all non-kosher food.  *Id.*

### *High Desert State Prison ("HDSP")*:

On April 28, 2009, plaintiff was incarcerated at HDSP (#89-1, Ex. A; #89-1, Ex. B).  He immediately asked defendants Calderin and Baca for kosher meals, and provided contact information for several rabbis in the Las Vegas area who could verify his Orthodox Jewish affiliation (#105, pp. 10-11).[3]  Plaintiff alleges that from April 29, 2009 to July 4, 2009, he was starved of all but 300 to 500 calories per day of kashrut compliant kosher nourishment (#4, pp. 6,

---

[2] "Jews following kashrut may only eat animals with split hooves and that chew their cud and certain fowl and fish with scales and fins.  Dairy products and meat are not allowed to be consumed in the same meal.  It is customary to wait at least six hours after consuming meat to eat dairy and at least one hour after drinking milk to eat meat.  Fruits, vegetables and some cereals qualify as kosher.  Kosher food must remain physically separate from non-kosher food, as must utensils and plates.  Disposable utensils satisfy kosher requirements." *Ashelman v. Wawrzaszek*, 11 F.3d 674, 675 n. 2 (9th Cir. 1997); *see also Resnick v. Adams*, 348 F.3d 763, 765 n. 1 (9th Cir. 2003).
[3] When plaintiff arrived at HDSP, he wore the traditional Hassidic beard and side curls, which plaintiff alleges provided defendants with additional notice of his religious affiliation (#4, p. 13).

11).  For the next five and one-half months, he was provided partially adequate food, but was still subjected to a 540 calorie per day deficit.  *Id.*  Plaintiff alleges that on May 8, 2009, Rabbi Bronchtain informed defendant Calderin that plaintiff required a kosher diet.  *Id.* at 13.  Shortly thereafter, the Aleph Institute, NDOC's "only recognized source of religious verification," notified defendant Calderin that plaintiff qualified for NDOC's kosher meal program.  *Id.*  Plaintiff alleges that during this time, his cellmate agreed to trade his kosher food items for plaintiff's non-kosher food items.  *Id.*  However, defendant Doe Officers 1 and 2 refused to provide plaintiff with a mainline menu food tray unless plaintiff stood at his cell door and ate all of the items in front of the officers.  *Id.* at 15.  The officers told plaintiff "we made all the other Jews eat this food, and you will too."  *Id.*

> *Southern Desert Correctional Center ("SDCC"):*

On December 11, 2009, plaintiff was transferred to SDCC (#89-1, Ex. A; #89-1, Ex. B). That evening, he informed SDCC's medical intake staff that he required a kosher diet; that he was on HDSP's kosher diet list; and that he "cannot and will not consume non-kosher food" (#105, p. 13). Plaintiff alleges that from December 11, 2009 to December 16, 2009, he was starved of all but 300 calories per day of kashrut compliant kosher nourishment (#4, pp. 20-21).  During this five-day period, SDCC officials refused to provide him with Jewish kosher meals, but gave him mainline menu food trays containing non-kosher food (#105, p. 13).  On December 15, 2009, a correctional officer took plaintiff to SDCC's infirmary for a health evaluation after the officer observed that plaintiff had only consumed a pint of milk and an orange daily since December 11, 2009, and was "visibly debilitated."  *Id.*  Plaintiff alleges that on December 16, 2009, he was able to submit an emergency grievance form, after which prison officials provided him with a kosher lunch and dinner. *Id.*

*Lovelock Correctional Center ("LCC"):*

On January 7, 2010, plaintiff was transferred to LCC (#89-1, Ex. A; #89-1, Ex. B).  Plaintiff alleges that from January 7, 2010 to January 15, 2010, he was once again starved of all but 300 calories per day of kosher compliant nourishment (#4, p. 6).  Plaintiff alleges that when he arrived at LCC, "no procedure existed to identify or care for the needs of arriving prisoners who require kosher compliant nourishment, and intake officials did not have a written policy to guide them in accurately informing plaintiff of the procedure for obtaining it" (#105, p. 14).  Plaintiff further alleges that on January 7, 2010, he submitted a grievance to defendant Garcia, pleading that he had not eaten for two days and had only been given a cup of milk and one 90-calorie container of dry cereal per day. *Id*.  On January 12, 2010, defendant Garcia received a response from the Aleph Institute verifying plaintiff's Orthodox Jewish membership, and then met with plaintiff to complete LCC's Kosher Meals Tracking and Reporting Form.  *Id*.  That day, defendant Garcia transmitted plaintiff's approval to defendant Henry, who began to provide plaintiff with kosher meals on January 15, 2010. *Id.*

Plaintiff alleges that defendant Skolnik also violated his First and Eighth Amendment rights and his statutory rights under RLUIPA when, on December 6, 2010, defendant Skolnik issued a memorandum notifying all kosher-observant Jewish inmates that their kosher meals would be eliminated, effective February 1, 2011 (#4, p. 28).

Defendants allege that NDOC verifies the sincerity of each inmate's religious beliefs before approving that inmate for a religious diet (#89-2, Ex. D, ¶ 3).  Defendants acknowledge that plaintiff's religious verification took time and that he was not immediately placed on a kosher diet upon arrival at HDSP (#89-1, Ex. C, pp. 19-21; #89-2, Ex. D, ¶ 5).  Defendants also acknowledge that once plaintiff was approved to receive a kosher diet, HDSP culinary staff ordered plaintiff's

kosher meals, which took additional time (#89-1, Ex. C, pp. 19-21; #89-1, Ex. D, ¶¶ 6-7). Defendants state that plaintiff ultimately began to receive a kosher diet on June 30, 2009—sixty-four days from his intake into NDOC (#89-1, Ex. C, p. 20).[4]

NDOC's Chief of Purchasing and Inmate Services, Dawn Rosenberg, states that NDOC provides kosher meals to those inmates whose sincerely held religious beliefs mandate the consumption of a kosher diet (#89-2, Ex. E, ¶ 7). NDOC provides two kosher diets—the Current Kosher Menu ("CKM") and the Common Fare Menu ("CFM"). *Id*. The CKM consists of prepackaged ready-to-eat meals that cost approximately $15.17 per day, per inmate. *Id*. at ¶ 8. Because of the high cost associated with this menu, on February 21, 2012, NDOC implemented the CFM, an institutionally prepared kosher diet which costs approximately $8.76 per day, per inmate. *Id*. at ¶¶ 9-10. Five NDOC institutions have kitchens certified to prepare the CFM by Scroll K, a Kashrut certifying organization. *Id*. at ¶ 13. All menu items are also approved by a registered dietician to meet and/or exceed the prisoner's minimum dietary requirements, as established by the Food and Nutrition Board Institute of Medicine, National Academies. *Id*. at ¶ 21.

Ms. Rosenberg states that prior to implementing the CFM, NDOC purchased its food in bulk quantities. *Id*. at ¶ 15. Ordering individual meals on an "as needed" basis was not an available option because NDOC institutions only ordered a sufficient quantity of those meals to meet the needs of those inmates already approved to participate in the kosher diet program. *Id*. at ¶¶ 14-15. There was a period of time between the inmate's request for a kosher diet and the inmate's receipt of the CKM, which included the time necessary to verify the sincerity of the inmate's religious beliefs and the time necessary to order and receive the CKM food products. *Id*. at ¶ 16. Further, when an inmate was transferred to another institution, the receiving institution would add the inmate to its list

---

[4] Plaintiff alleges that he began to receive a kosher diet on July 4, 2009—sixty-seven days after his intake into NDOC (#105, p. 12).

of inmates approved to receive a kosher diet, and then begin the process of ordering additional CKM food products. *Id*. at ¶ 18. Thus, there was usually a slight delay between the date of the inmate's transfer and the date the inmate would begin to receive CKM meals at the new institution. *Id*. Defendants acknowledge that because of these transitions, there were periods of time when plaintiff did not receive the CKM diet. *Id*. at ¶ 19. However, defendants assert that once the CKM meals were ordered from NDOC's supplier and delivered to the institution, plaintiff would begin to receive kosher religious meals. *Id*.

HDSP's chaplain, Julio Calderin, states that he is responsible for verifying whether an inmate's request for a religious diet is required by that inmate's sincerely held religious beliefs (#89-2, Ex. D, ¶ 3). Defendant Calderin states that he received and processed plaintiff's request for a kosher diet. *Id*. at ¶ 3. However, the verification process took some time, and plaintiff was not immediately placed on a kosher diet. *Id*. at ¶ 5. Ultimately, defendant Calderin approved plaintiff's request for a kosher diet and transmitted the approval to HDSP's culinary, which submitted an order for an additional kosher meal to be delivered to the institution. *Id*. at ¶ 6.

NDOC's former director, Howard Skolnik, states that in December 2010, he issued a memorandum notifying inmates receiving the CKM that NDOC would be transitioning to the CFM (#89-2, Ex. F, ¶ 5). However, defendant Skolnik never implemented the transition from the CKM to the CFM. *Id*. at ¶¶ 6-7. Defendant Skolnik states that as of the date of his retirement, January 3, 2011, the CKM was still the kosher religious diet provided to NDOC inmates. *Id*. at ¶ 8.

Defendants move for summary judgment on the grounds that: (1) defendants are entitled to qualified immunity as to plaintiff's claim that the delay in approving him for a kosher diet at HDSP violated his constitutional and statutory rights (#89, p. 6); (2) defendants are entitled to qualified immunity as to plaintiff's claim that the delay in providing him with a kosher diet following his

approval at HDSP and following his transfers to SDCC and LCC violated his constitutional and statutory rights (#89, p. 7); (3) defendants are entitled to qualified immunity as to plaintiff's claim that NDOC's kosher diet is nutritionally insufficient (#89, p. 8); (4) plaintiff has waived his claims for injunctive relief by opting into and agreeing to be bound by the class action in *Ackerman v. Nevada Department of Corrections*, No. 2:11-cv-00883-GMN-PAL (#89, pp. 13-14); (5) plaintiff's claims against defendant Skolnik must be dismissed (#89, p. 11); (6) plaintiff is barred from recovering monetary damages under RLUIPA (#89, p. 9); and (7) the Eleventh Amendment bars damages for all official capacity claims. *Id.* at 10.

Defendants attach several documents in support of their motion for summary judgment, including:

1. plaintiff's Case Note Printout Report from January 1, 2008 to December 28, 2012 (#89-1, Ex. A);
2. plaintiff's Offender Movement History Report (#89-1, Ex. B (*sealed*));
3. plaintiff's Inmate Grievance History Report (#89-1, Ex. C);[5]
4. the declaration of Julio Calderin (#89-2, Ex. D);
5. the declaration of Dawn Rosenberg (#89-2, Ex. E);
6. the declaration of Howard Skolnik (#89-2, Ex. F);
7. an order certifying class action, staying the proceedings and directing class notification in *Ackerman v. Department of Corrections, et al.*, No. 2:11-cv-00883-GMN-PAL, with attached exhibits (#89-2, Ex. G, G-A, G-B, G-C);
8. a joint motion pertaining to the *Ackerman* litigation, with attached exhibits (#89-2, Ex. H, H-A, H-B);
9. a February 17, 2012, order in the *Ackerman* litigation granting plaintiff Howard Ackerman's motion for a preliminary injunction and entitling those inmate class members to continue to receive the CKM (#89-2, Ex. I);
10. an October 11, 2012, order in the *Ackerman* litigation (#89-2, Ex. J); and
11. a notice of appeal to the Ninth Circuit Court of Appeals in the *Ackerman* litigation (#89-2, Ex. K).

Plaintiff opposes defendants' motion for summary judgment on the grounds that: (1) defendants are not entitled to qualified immunity because HDSP's sixty-seven day delay in

---

[5] Defendants have failed to authenticate exhibits A, B and C. Accordingly, the court will not consider these exhibits in its analysis.

providing a kosher diet to an inmate known to be rejecting all non-kosher food was not objectively reasonable or legally permissible (#105, pp. 19-24); (2) plaintiff is not barred from recovering monetary damages under RLUIPA (#105, p. 26); (3) plaintiff does not seek damages against defendants in their official capacities, except "allowable nominal and punitive relief" (#105, p. 26); (4) plaintiff's claims against defendant Skolnik in counts IX and X are not prospective (#105, pp. 26-27); and (5) plaintiff does not waive his claims for injunctive relief by virtue of class membership in the *Ackerman* litigation.  *Id.* at 27.

As a preliminary matter, the court notes that the plaintiff is proceeding *pro se.*   "In civil cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of the doubt."  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  LAW & ANALYSIS

**A.     Legal Standards**

**1.  42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

**2.  Summary Judgment Standard**

 Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

 The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial.  *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).  Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion.  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130,l 1134 (9th Cir. 2000).

**B.   ANALYSIS**

**1.  Qualified Immunity**

Where a plaintiff has stated a valid cause of action under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity.  *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  This immunity is granted broadly and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In considering a claim of qualified immunity, the court must determine 'whether the facts that a plaintiff has alleged … make out a violation of a constitutional right,' and 'whether the right at issue

was clearly established at the time of defendant's alleged misconduct.'"  *Id.*  (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  Whether a right is clearly established turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  *Id.*

"[A] district court should decide the issue of qualified immunity as a matter of law when 'the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts.'"  *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003)).  "Only where 'historical facts material to the qualified immunity determination are in dispute' should the district court submit the issue to a jury."  *Conner*, 672 F.3d at 1131 (quoting *Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 (9th Cir. 2008)).

### *Delay in Approval and Receipt of Kosher Diet at HDSP*

Defendants contend that they are entitled to qualified immunity as to: (1) HDSP's delay in approving plaintiff's request for a religious kosher diet, and (2) HDSP's delay in procuring plaintiff's religious kosher diet once he was approved (#89, pp. 6-8; #108, pp. 2-3).  Defendants argue that they are entitled to qualified immunity because HDSP had no legal obligation to provide plaintiff with a kosher diet until it could confirm that his sincerely held religious beliefs mandated consumption of a kosher diet (#108, p. 3).  In the alternative, defendants argue that they are entitled to qualified immunity because the law was not clearly established as to how long HDSP could delay in approving and procuring an inmate's religious diet, and the HDSP defendants reasonably believed their delay was constitutionally permissible (#89, pp. 7-8).

Plaintiff replies that defendants are not entitled to qualified immunity because HDSP's delay in approving and providing his religious diet was objectively unreasonable (#105, pp. 19-22; see

1   #105, p. 21 ("No "reasonable" official would reasonably believe that it was lawfully permissible to

2   ignore abject suffering and physical deterioration for [sixty-seven] days when the means to alleviate

3   that suffering was readily available to them merely because a written procedure did not require them

4   to act [in a timely fashion].")).

5

6           There can be no doubt that plaintiff possesses an Eighth Amendment right to receive

7   adequate food while incarcerated, and that defendants will violate the Eighth Amendment if they

8   respond with deliberate indifference to plaintiff's health or safety.  *Johnson v. Lewis*, 217 F.3d 726,

9   731 (9th Cir. 2000) (citations omitted); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  There can

10  also be no doubt that plaintiff possesses a First Amendment right "to be provided with food

11  sufficient to sustain [him] in good health that satisfies the dietary laws of [his] religion."  *McElyea v.*

12  *Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).  It is undisputed that when an inmate requests a religious

13  dietary accommodation, the prison may evaluate that inmate's religious beliefs to ensure that the

14  inmate's desire to receive a religious diet is "rooted in religious belief" and not in "purely secular"

15  philosophical concerns.  *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981); *see also Cutter v.*

16  *Wilkinson*, 544 U.S. 709, 725 n. 13 (2005) ("[P]rison officials may appropriately question whether a

17  prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic.").

18

19          Thus, the issue in this case is not whether defendants could inquire into plaintiff's religiosity,

20  but rather, how long defendants may legally deprive plaintiff of a necessary component of his

21  religion (i.e., kosher meals) while making this inquiry.  As with other areas of law, no single rule

22  exists on how expeditiously prison officials must determine the sincerity of an inmate's religious

23  beliefs.  Instead, this is a context-specific inquiry that is dependent upon the unique factual

24  circumstances of each inmate's case.

Although the court acknowledges that "the informed judgment of prison officials is to be afforded deference," *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994), the court also recognizes that there are limits to how long a state may suspend an inmate's First Amendment rights while determining the sincerity of his religious beliefs. Plaintiff asserts that defendants' sixty-seven day delay in approving and procuring his religious diet was objectively unreasonable, as defendants had the resources to immediately verify his Orthodox Jewish affiliation and provide him with a kosher diet in a timely fashion (#105, pp. 19-22). Defendants concede that there was generally a period of time between an inmate's request for a kosher diet and the inmate's receipt of the CKM (#89-2, Ex. E, ¶ 16; #89-2, Ex. D, ¶ 5). However, defendants assert that this period of time was necessary to verify the sincerity of the inmate's religious beliefs and to order and receive the additional CKM meals (#89-2, Ex. E, ¶ 16).

When analyzing a claim of qualified immunity, the court must view the facts in the light most favorable to the plaintiff. *Saucier*, 533 U.S. at 201. When viewing the facts in the light most favorable to plaintiff, HDSP took sixty-seven days to approve plaintiff's request for a religious kosher diet and procure that diet—even though: (1) plaintiff immediately provided contact information for two rabbis in the Las Vegas area who could verify his Orthodox Jewish affiliation; (2) on May 8, 2009, Rabbi Bronchtain informed defendant Calderin that plaintiff required a kosher diet; (3) the Aleph Institute notified defendant Calderin that plaintiff qualified for NDOC's kosher meal program; and (4) plaintiff consistently refused all non-kosher nourishment to the point of starvation (#4, p. 13). The court finds that the propriety of defendants' delay in providing plaintiff's kosher diet is dependent upon resolution of the factual disputes in this case. Defendants have not explained why it took sixty-seven (or possibly sixty-four) days to approve and procure plaintiff's kosher diet. Without further information, the court cannot find that a reasonable prison official

would believe that depriving a devout Orthodox Jewish inmate of adequate kosher nourishment for sixty-seven days was constitutionally permissible.  *See Ashelman v. Wawrzaszek*, 111 F.3d 674, 678 (9th Cir. 1997) ("The prison must provide a diet sufficient to sustain [a Jewish prisoner] in good health without violating the laws of kashrut."); *see also Theodore v. Coughlin*, 1986 WL 11456, at *3 (S.D.N.Y. 1986) ("While a denial of [kosher] access for four days might be legitimate under some circumstances, a denial for three weeks is not.")   As this is a case where "historical facts material to the qualified immunity determination are in dispute," qualified immunity is inappropriate at this juncture.  *See Torres*, 548 F.3d at 1211; *Wilkins v. City of Oakland*, 350 F.3d 949, 955-56 (9th Cir. 2003) (whether officers made a reasonable mistake of fact or law may depend on the jury's resolution of disputed facts); *Lolli v. County of Orange*, 351 F.3d 410, 421-22 (9th Cir. 2003).

A jury could find that HDSP's sixty-seven day delay in providing plaintiff with his religious dietary accommodation was unreasonable, and therefore, constitutionally infirm.   Under such circumstances, defendants' actions are not protected by qualified immunity.  Accordingly, the court recommends that defendants' motion for summary judgment be denied as to plaintiff's claims in Counts I and II.

### *Delay in Receipt of Kosher Diet after Transfer to SDCC and LCC*

Defendants next assert that they are entitled to qualified immunity as to SDCC and LCC's delay in providing plaintiff with a kosher diet following his institutional transfers (#89, p. 7). Defendants argue that the law is not clearly established on this point, and the SDCC and LCC defendants reasonably believed that their administrative delays were constitutionally permissible. *Id.* at 7-8.

1

2

3

4

Plaintiff replies that defendants are not entitled to qualified immunity because SDCC and LCC's administrative delays in providing his religious diet were objectively unreasonable (#105, p. 19).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

When viewing the facts in the light most favorable to plaintiff, the SDCC defendants denied plaintiff of all but 300 calories of kosher nourishment from December 11, 2009 through December 16, 2009, and the LCC defendants denied plaintiff of all but 300 calories of kosher nourishment from January 7, 2010 through January 15, 2010 (#4, pp. 6, 20-21). Defendants admit that there is a "slight delay between the date of an inmate[']s transfer and the date the inmate would begin receiving the CKM at the new institution" (#89-2, Ex. E, ¶ 18). However, defendants do not explain why this delay is necessary for an inmate who has already been approved to receive NDOC's kosher diet. Presumably, the receiving institution has notice of all inmate transfers. Defendants do not explain why the receiving institution had to wait until the inmate had actually been transferred before beginning the process of ordering additional CKM meals. Without this information, the court cannot find that a reasonable prison official with advance notice of an Orthodox Jewish inmate's transfer would not proactively order the inmate's approved kosher diet. Instead, the reasonableness of this delay appears to be based on the resolution of factual issues—which falls under the province of the jury. *See Torres*, 548 F.3d at 1211 (qualified immunity is inappropriate where "historical facts material to the qualified immunity determination are in dispute.").

23

24

25

26

27

28

A jury could conclude that SDCC and LCC's delay in providing plaintiff with his religious dietary accommodation was unreasonable; and thus, constitutionally infirm. *See Theodore*, 1986 WL 11456, at *3 ("While a denial of access [to a kosher diet] for four days might be legitimate under some circumstances, a denial for three weeks is not."). Under such circumstances, defendants' actions are not protected by qualified immunity. Accordingly, the court recommends that

defendants' motion for summary judgment (#89) be denied as to plaintiff's claims in counts III, IV, VII and VIII.

### 2.   Nutritional Sufficiency

Defendants argue that they are entitled to qualified immunity as to plaintiff's claim that the kosher diet he receives is nutritionally insufficient (#89, pp. 8-9; #108, p. 4).  Defendants assert that they reasonably relied upon their vendors' representations as to the kosher status of the diet and they reasonably relied upon their nutritionist's assurance that the CKM is nutritionally sound.  *Id.* The court notes that plaintiff does not appear to contest the CKM's nutritional or caloric sufficiency. Instead, plaintiff argues that "gentile" culinary workers tainted the kosher food to render it non-kosher and unfit for plaintiff's consumption (#4, pp. 16-17; #105, pp. 24-25).  The court also notes that on May 14, 2012, the court held a motions hearing in which plaintiff indicated that the kosher status and nutritional status of LCC's kosher diet was no longer in dispute (#60).  Accordingly, the court recommends that defendants' motion for summary judgment be denied as moot as to plaintiff's alleged claim that the CKM is nutritionally insufficient.

### 3.   Plaintiff's Claims for Injunctive Relief

Defendants contend that plaintiff has waived his claims for injunctive relief by opting into and agreeing to be bound by the class action in *Ackerman v. Department of Corrections*, 2:11-cv-00883-GMN-PAL (#89, p. 13).  The court notes that the *Ackerman* litigation involves the planned replacement of the CKM with the CFM, and seeks "[i]njunctive relief to ensure that adequate access to kosher meals are available at all times" (*Ackerman*, Docket No. 29, p. 9).  Likewise, in the current litigation, plaintiff seeks injunctive relief to: (1) prevent defendants from replacing the CKM with the CFM; (2) prevent defendants from diminishing the kashrut compliance of NDOC's current

kosher diet; and (3) order defendants to implement a policy and procedure to inform each inmate of their legal right to receive a religious diet (#4, p. 34).

On February 17, 2012, the *Ackerman* court granted plaintiff Howard Ackerman's motion for a preliminary injunction, and ordered that all class members (including plaintiff) continue to receive the CKM (*Ackerman*, Docket Nos. 64 & 72). On May 3, 2013, the *Ackerman* court decertified the class and dissolved the preliminary injunction (*Ackerman*, Docket No. 234, p. 14). Therefore, the court finds that plaintiff is no longer a part of the *Ackerman* litigation and is not bound by it. Plaintiff has not waived his claims for injunctive relief by his prior membership in the *Ackerman* class action.

Accordingly, the court recommends that defendants' motion for summary judgment be denied as to plaintiff's claims for injunctive relief.

### 4.   Plaintiff's Claims against Defendant Skolnik

Defendants state that plaintiff's claims against defendant Skolnik are prospective and must be dismissed (#89, p. 12). Plaintiff contends that defendant Skolnik violated his First and Eighth Amendment rights and his statutory rights under RLUIPA when, on December 6, 2010, defendant Skolnik issued a memorandum notifying all kosher-observant Jewish inmates that the CKM would be replaced with the CFM (#4, p. 28).

The court notes that the CFM was not instituted until February 21, 2012 (#89-2, Ex. E, ¶ 10)—after defendant Skolnik retired (#89-2, Ex. F, ¶ 3). Defendant Skolnik did not implement the transition from the CKM to the CFM, and as of the date of defendant Skolnik's retirement, the CKM was still NDOC's kosher religious diet. *Id.* at ¶¶ 6-8. Because defendant Skolnik did not then and cannot now implement the policy transitioning approved inmates from the CKM to the CFM, plaintiff's claims against defendant Skolnik in counts IX and X are moot.

Accordingly, the court recommends that defendants' motion for summary judgment be granted as to plaintiff's claims against defendant Skolnik, and that Counts IX and X be dismissed from this action with prejudice.

### 5.   RLUIPA Bars Recovery of Monetary Damages

Under RLUIPA, a plaintiff cannot recover monetary damages against defendants sued in either their individual or official capacities.  *See Mauwee v. Donat*, 2009 WL 3062787, at *6 (D.Nev. Sept. 18, 2009) (citing *Rendelman v. Rouse*, 569 F.3d 182, 184 (4th Cir. 2009)); *see also Holley v. Cal. Dep't of Corrections*, 599 F.3d 1108, 1112 (9th Cir. 2010) (finding that a plaintiff cannot maintain a damages claim under RLUIPA against defendants in their official capacities). Accordingly, the court recommends that defendants' motion for summary judgment be granted as to plaintiff's RLUIPA claims for monetary damages.

### 6.   Eleventh Amendment Immunity

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity … against one of the United States by Citizens of another State…."  U.S. Const. amend. XI.  The Supreme Court has found that a suit against a state official in his or her official capacity is not a suit against that official, but rather, a suit against that official's office.  Therefore, an official acting in his or her official capacity is not a "person" under section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Since the state and its officials are not considered "persons" within the meaning of section 1983, "they cannot be held liable under the statute for money damages."  *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003).

Plaintiff names defendants in both their individual and official capacities (#4, pp. 3-5). However, defendants cannot be sued in their official capacities for money damages.  *Bank of Lake*

-18-

*Tahoe*, 318 F. 3d at 918.  Accordingly, to the extent that plaintiff seeks money damages, the court recommends that all claims against defendants in their official capacities be dismissed with prejudice.

### III.    CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that defendants' motion for summary judgment (#89) should be granted in part and denied in part.  The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and LR Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to FED.R.APP.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part, as follows:

**IT IS RECOMMENDED** that defendants' motion for summary judgment be **DENIED** as to plaintiff's claims in counts I and II.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment be **DENIED** as to plaintiff's claims in counts III, IV, VII, and VIII.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment be **DENIED** as moot, as to plaintiff's alleged claim that the CKM is nutritionally insufficient.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment be **DENIED** as to plaintiff's claims for injunctive relief.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** as to plaintiff's claims against defendant Skolnik, and that counts IX and X be **DISMISSED** from this action with prejudice.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** as to plaintiff's RLUIPA claims for monetary damages.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** as to plaintiff's claims for monetary damages against defendants in their official capacities.

**DATED**: August 21, 2013

_____
**UNITED STATES MAGISTRATE JUDGE**